Are we still dealing with this case? This is Jason Pepe for the appellant, David Oppenheim and Jeffrey Monhate are here for the appellees and Mr. Pepe, you may begin. Mr. Court, Jason Pepe for Appellant Juan Pinto. GoDaddy in this case harassed 1.2 million of its customers with unwanted texts and voice messages. That led to three cases being filed, two in Alabama, one in Arizona that were consolidated and ultimately the parties reached a settlement agreement which provided for two kinds of awards, a $150 coupon and a $35 cash award. The threshold issue in this case is what is a coupon and that's an issue of first impression for this court. The statute does not define the term coupon, so we just look at the plain language, apply the ordinary meaning and in this instance, most dictionaries define that term as the Fourth Circuit pointed out, lumber liquidators. It's an instrument that entitles its holder to a benefit such as a discount or an entire product. Clearly, in this instance, the GoDaddy awards in this case are coupons in CAFA's settlement provision supply and also attorney fees provision supply, the district court disagreed and that is an instrument of error. The second error in the case is settlement approval. She didn't apply the appropriate standard. 28 U.S.C. section 1712E requires that that settlement agreement be strictly scrutinized and at a minimum, that means consideration of redemption rates of the coupons. She did not do that. Rather, she valued the settlement at $35 million without consideration of the redemption rates. If we look at the actual data in this case, the claims made were only 2% of the class. Roughly 30,000 people filed claims and that resulted in $400,000 in cash awards being claimed and $1.85 million in vouchers. That's a paltry, anemic 2% and then from that, we would deduct further because there's only going to be maybe a 10% redemption rate. So what you're looking at at the end of the day is a settlement that provides only $700,000 in value to the class, but yet the attorneys were awarded $7 million in cash. That fee has to be vacated either under CAFA or this court's holdings in Camden 1 and Waters and also the settlement must be vacated because in absolute terms, it doesn't provide enough compensation to the class and it includes that disproportionate attorney's fee award. Excuse me. And to further guide the court, we can look to other courts that have looked at this issue. There the court looked at this much like this. I'm sorry, you're moving a little bit away from the microphone. Oh, excuse me. I'm sorry. That case specifically dealt with the additional issue of whether the cash alternative affects all the coupon analysis and there the Fourth Circuit expressly rejected that notion for two reasons. First, it would read 1712C right out of the statute because it expressly contemplates that there would be cash and coupon settlements and also it would thwart Congress's intent to allow settlement agreements to simply provide for cash and then allow that to take the settlement agreement out from under CAFA. So, Your Honor, the issues are quite plain. It's an issue of statutory instruction. It is de novo review and based on all the appellate courts that have looked at this previously, I think the only conclusion is that these are coupons. CAFA applies and the district court made a mistake both in the fee award and in the grouping of settlement. Absent any further questions from the panel, I will... Can I ask you a question? Yes, Your Honor. About, now I have the same thing. It appears to be contagious. There are fairness factors in Rule 23E2. There were amendments to this rule December 2018. It doesn't appear that the district court considered these relatively new fairness factors. Do we need to remand it back to the district court for consideration? Absolutely, Your Honor. If as a matter of CAFA and as an alternative Rule 23, the comments to Rule 23 tell us that coupon settlements specifically ought to be scrutinized with heightened scrutiny, which is basically what is also provided in CAFA. So I would say to Your Honor's question, yes, as a matter of Rule 23 and yes, as a matter of CAFA, the case must be remanded back to the district court to determine what the value of the settlement is. You can't approve a settlement without knowing how much it's worth. And there, the district court valued the settlement at $35 million when at best, you're looking at $700,000 to the class. And compare that against a $7 million cash attorney's fee award. I mean, that's bordering on shocking. Bordering on shocking that the district court did not look at the 23E2 factors? Absolutely, that's correct. You're not quibbling or are you quibbling with the court's application of the Bennett factors? Well, Your Honor, if you look at factors two and three, that is specific reference to the valuation of the settlement. And that's what really this whole case is about is how do you value the settlement. She valued it at $35 million, and that's just, pardon me, ridiculous. I mean, you're looking at $700,000 in actual value to the class. And that is precisely the kind of settlement that Congress was concerned about and why it enacted CAFA. Thank you, Your Honor. Thank you. Mr. Oppenheim? Thank you, Your Honor. Dave Oppenheim for the class, the appellees. Counsel is essentially asking this court to overrule its precedence on class action settlements, that it's repeated three times in Waters, in Camden, and in Portner, all of which echoing the United States Supreme Court's pronouncements in Boeing v. Van Gemert, that where you make money available for class members to claim, that is a value, and that is what's made available as the appropriate measure of the fee. What this settlement is, like the settlements in those three cases and countless other settlements in this district, or in this circuit, I mean, was a $35 million cash settlement fund out of which people could claim $35. As the district court found in its long and thoughtful opinion, it was consistent with other TCPA text message settlements, and the numbers made sense. At the time it was negotiated, we didn't know exactly how many class members there were. We assumed it was around a million, so $35, $35 million fund. As it turned out, there were 1.2 million class members, so maybe we didn't make as good a deal as we possibly could. But remember, this was a hard-negotiated, hard-fought case, combination of cases, that were mediated and settled in the shadow of the United States Supreme Court deciding what is and what is not an automatic dialing system for purposes of the TCPA. It was a make-or-break decision, decision ultimately Dugwood versus Facebook. If it came out one way, it was largely a glide path to probably a billion dollars in liability. Comes out the other way, the case is worth what you can get from a gumball machine. And the settlement was made with both parties seeking an insurance policy. We wanted to get something of value for the class. GoDaddy wanted to eliminate the risk, and the deal was struck, obviously, with the assistance of retired judge Wayne Anderson. And so why are we here? What's the difference? And the difference is that rather than do what the class council did in Waters and in Camden and in Portner, and say, okay, everybody, you can claim your $35 or you cannot participate, that's it. The parties here decided that because this was a class full of actual GoDaddy customers who used their services on a regular basis, and because their services are domain registry and telephone lines and that sort of thing, that there are ongoing charges if you want to continue using the services. And so the parties also negotiated an alternative. Class members who wanted to participate in the settlement were absolutely entitled to their $35 out of the $35 million fund, but they also had the choice of trading that $35 for a $150 credit. But so you're arguing that this voucher, this alternative option to the cash payment, is not a coupon under CAFA. But how do you reconcile that argument with the ordinary meaning of the word coupon, which is quite broad? For example, Webster's Third New International Dictionary says a coupon is a form or check indicating a credit against future purchases or expenditures. Isn't the voucher a credit against future purchases? I suppose if this court were to define the word coupon that broadly, but that would essentially mean that any in-kind relief offered in a settlement would qualify as a coupon. The statute doesn't define it. No, the statute absolutely doesn't. So we've got to figure out how to define it. Right. One option is to look to dictionary definitions. It is a broad word. Well, and one of the other dictionary definitions is simply a discount, and that's where the Ninth Circuit and the Fourth Circuit have gone in terms of determining whether in-kind relief is a coupon. The main point in both Lumberman's and the two Ninth Circuit cases is whether the amount is enough to use simply for. . . You look at the terms of the so-called coupon, don't you? Deciding what is it. Right, and if you can. . . It may be that you take the coupon or whatever it is and you go to GoDaddy and you've got to spend some more money in order to realize the coupon. Right. So that's one factor. Right, one factor is whether you have to spend more money.  Another factor is how restrictive. . . What do you mean you don't have to spend more? You might have to spend more money. There are multiple options. It's worth $150. Right. And if you want more than $150 worth of service out of GoDaddy, you get credit. Or is it worthless? No, you absolutely, if you want more than $150, you can use that as your first $150 instead of using cash. Absolutely. I'm just saying that GoDaddy offers. . . You have to use it with GoDaddy also. Yes. You can't go to the next door to somebody else. Right. Just like the Ninth Circuit and Walmart had a situation. . . Well, that gets back to Judge Branch's question about coupon. You've got to take all the facts into account. Yes. Because no two are alike. I think that this one is more like the Walmart situation in the Ninth Circuit than it is like the lumberman situation in the Fourth Circuit because there are plenty of products that you can buy from GoDaddy for less than $150. It's transferable. And GoDaddy is sort of a leader in the industry. If you want to get your website domain registered, you'd be going there. It's not steering business to somebody with a lot of competitors. And that was really the reasoning of the Ninth Circuit and Walmart. But I think our primary argument is that we don't even need to be worrying about this at all because do you know how much of this settlement was devoted to, valued on the coupons? Zero. What percent of the class did business with GoDaddy? All of them. All of them had done business. Yeah. They were all customers. Right. These are all their customers. And I think what distinguishes this case from the cases that the appellant relies upon is that in every single one of those cases, somebody was trying to do what Congress was trying to stop with CAFA, which is to say we're making a bunch of in-kind relief and I'm leaving aside the question of whether the stuff's coupons or not for a second because that's a separate issue. But we are valuing a bunch of in-kind relief we're making available instead of a bunch of cash that we're making available, and we're using that value to calculate the attorney's fees. In the Lumber Liquidators case where counsel frankly overstates the holding and is saying that hybrids always mean the coupon rules apply, that's not what happened. What was really going on there is that there was a $22 million cash fund out of which the attorneys asked for $11 million, and another chunk went to administration, and so there was a very small pool of actual cash, and then there were $14 million in in-kind relief, vouchers, coupons. I'm not opining. Obviously the Fourth Circuit held they were coupons in that case, but the key there is that the class counsel asked for the fee to be based on the total $36 million value, 22 plus 14, when 14 of it was clearly these vouchers. Here the entire $35 million is cash. This settlement would have been fine had we not actually offered the alternative. We could have just said everybody who claims gets $35 million period, and there you go, and it's perfectly consistent with the precedent in this circuit and in the Supreme Court, and we wouldn't be talking about anything. So the rule I think that the appellants are advocating for is a bad one because it would just encourage people not to give options, and that's not what Congress was going for in CAFA. One last point is I'm running out of time, and that is I think I mentioned that this settlement was reached in the shadow of the Dugwood decision in the U.S. Supreme Court. Ultimately that case came down in favor of the defense side, that the U.S. Supreme Court opted for the narrow definition of auto dialer, which means that this appeal, at least to the extent that it seeks to overturn the settlement, is not only legally insufficient, but it's downright reckless and destructive because the alternatives at this point are the class gets the relief that was afforded them in the settlement, which I think the district court wrote a comprehensive opinion about why that's good relief, or they get nothing. And the fact that counsel stood up and said the settlement itself ought to be reversed as opposed to simply recalculating the fees was a little bit shocking. Let me ask you a question. I asked your opposing counsel about the revisions to Rule 23E in December of 2018. The district court considered our historic Bennett factors, but did not reference or apply the new factors in 23E relating to fairness. Is that reversible error? I don't believe it is because the district court's opinion, I believe, is comprehensive and covers the topics, albeit not in a organized way. I don't think there's anything missing, in other words, in the analysis. Thank you, Your Honors. Thank you. Counsel, we'll hear from Mr. Monheit. Thank you, Your Honor. Mr. Monheit. Excuse me. On behalf of GoDaddy. Good morning. May it please the court. My name is Jeff Monheit, and I represent defendant at GoDaddy.com LLC. And in my time, I'd like to highlight three points. The first is that GoDaddy takes no position on the fee award or what we view as sort of the primary thrust of this appeal, which is the amount of the dispute over the attorney fee award. But when it comes to the settlement approval order and the district court's decision to approve the class settlement as fair, reasonable, adequate, and not the result of collusion, the standard overview is abuse of discretion. It's not an overview. And in the briefing, the objector has not suggested that the district court abused its discretion, and that issue is dispositive of this appeal. Second, regardless of the court's ultimate decision on whether CAFA's coupon provisions apply or a decision on the fee award, the decision approving the settlement should be affirmed. In the first part of that, I think you heard counsel for plaintiffs talk about why the district court was correct that this is not a coupon settlement. There are a number of sub-factors that the district court identified, the first being that every class member had the choice between taking $35 in cash or $150 in in-store credit to GoDaddy. And that in-store credit is freely transferable, no minimum purchases, and it's good on all of the products and services GoDaddy offers. GoDaddy is the world's largest domain name registrar, meaning that they are one of the main places that people go to establish a presence on the internet, whether to register domain names, to host websites, to purchase email services, to purchase a host of other products and services to establish an internet presence online. What's the minimum payment that a GoDaddy customer can make for any product or service that GoDaddy provides? It's a great question. So for most domain names, you can register a number... It depends on the end, whether it's a .com or a ... a number of different endings, but they can be as low-cost as $4 and go up from there, depending on both the domain name and how valuable it is and what the GCLD, the generic top-level domain, is. For that $4 purchase, is it a one-time thing or is it a recurring? Recurring every year. So $4 a year. Correct. That is on the low end, and again, it can go up from there. And similarly, for web hosting services, that can be as low as $4 to $5 a month. So for a year... Please don't make me do math up here, but multiply that by 12 and you can get sort of the yearly hosting fees from there. But what we're talking about is a year or more, multiple years of these services or products for the value of that $150 voucher. How would you describe the difference between a voucher and a coupon? That's also a great question. I think here it's important to note that this voucher essentially gives you, the customers, the right to $150 in products and services, meaning they could get a number of different products, whatever they chose from GoDaddy. It's not a discount, and I would highlight... I'm sorry, I know I'm already over time, but to distinguish this case from Lumber Liquid... You can only spend $150 on GoDaddy products, right? I'm sorry, I don't think I quite understand the question. You get a voucher for $150 if you elect that. That's correct. You can only spend that on GoDaddy products. That's correct. It is only usable with GoDaddy. But just to distinguish this from Lumber Liquidator's, the Fourth Circuit decision, in that case, the vouchers would not cover the cost to repair the defective flooring that was at issue. Here, this case has nothing to do with the products and services GoDaddy offers, and that's another factor that weighs against finding that these are coupons. And I know I'm already over time, so unless the panel has further questions, I will step away. Thank you. All right. Thank you, Mr. Monhage. Mr. Pepe, you may proceed. Thank you, Your Honor. Judge Posner in Radio Shack and another Seventh Circuit panel in Southwest Airlines, as well as the Fourth Circuit Lumber Liquidators, have expressly rejected this distinction between a voucher and a coupon. That is, is there a discount, or are you able to get an entire product? And the reason why is the statute is intended to apply to the broadest range of non-monetary relief. The statute itself says that. Legislative history says that. So regardless of whether it is a discount on a product or you get an entire product, say a four-month.com subscription for a year, is inconsequential to the application of CAFA. An interesting point came out that a significant amount of value would be forfeited in these coupons, which makes them substantially... Hey, keep your voice up, would you? Yes, I apologize, Your Honor. If, for example, all you needed or wanted was a $4.com, and that was your subscription for a year, these expire in a year, so you would forfeit $146 in value, right? You wouldn't be able to use it beyond a year, and that's a huge distinction between this coupon and cash, which is ultimately the question. The opinion referenced by the appellee in Ray Online DVD involved a choice between cash and a Walmart gift card, and the pivotal distinctions there were, is Walmart. I mean, you could pick from hundreds of thousands of goods here. You can only do business with GoDaddy for a certain universe of GoDaddy products, and it expires in a year. So even if you go beyond, excuse me, sort of a dictionary definition or a bright-line rule of what a coupon is, and you were to look at a more functional criteria, fact-specific, like the Ninth Circuit has done, you would clearly see that these are not cash. They don't spend like cash. They don't resemble cash in that way. They don't resemble the Walmart gift cards at issue in In Ray Online DVD. The settlement is not $35 million in cash, and this notion that somehow the presence of cash should extract these coupons from CAFA is misplaced, because the terms of the statute itself, 17c contemplates exactly this scenario, where you would have a portion for coupon and a portion for cash, and the rules provide specific attorney fees, provisions for the coupon portion and cash portion. And I would like to follow up on Your Honor's question about Rule 23 and the mistake that the district court made in terms of evaluating the settlement. First, as a matter of CAFA, I think something that maybe got lost in the oral argument, maybe even the briefing, is that under Rule 28 U.S.C. 17 sub e, the district court had to apply strict scrutiny. It didn't. And that means that the district court had to consider redemption rates. It didn't. That by itself is reversible error. And then if we look in absolute terms, even if you don't conclude that this is a CAFA coupon and CAFA applies, the district court still abused its discretion, because even under Waters and Camden, this is a phantom settlement, right? Waters specifically referenced an opinion by the Fifth Circuit strong that was a phantom settlement where $65 million was allegedly made available and only $1.5 million was actually collected. Those are kind of the ratios that we have in this case, whereas Waters, that case itself, had $40 million made available and 6.5 were actually collected. So there was a much smaller disparity there. Here we have a phantom settlement even under Waters and Camden. So either as a matter of CAFA or as a matter of Waters and Camden, this settlement does not survive appellate review and should be remanded to the district court for the parties to begin anew. And I think it is also overblown to say that the class isn't going to get anything, right? I mean, the Facebook opinion did... Excuse me. ...more narrowly define what an auto-dialer is, but there are still many theories available to the plaintiff. And I dare say the plaintiff isn't going to go away if this court reverses remands to the district court. They're not going to say, oh, we're done, the class isn't going to get anything. So look at the alternative, though. What's the alternative here besides trying again? $700,000. That's not even nuisance value. So I think the notion that it's this or nothing really kind of misstates the proposition before the court, which is they should produce a settlement that complies with and clears the hurdles imposed by Catholic. Without absent any questions for the panel, I'll yield my time. All right. Thank you. Thank you, Your Honor. And that concludes the document for this morning. This court will be in recess until 9 o'clock tomorrow morning. All rise.